ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **BLAKE REYES**<br><br>Recurrido<br><br>v.<br><br>**SP CONSTRUCTION GROUP LLC**<br><br>Recurrente | TA2026RA00022 | **REVISIÓN** procedente del Departamento de Asuntos del Consumidor (DACo)<br><br>Caso Núm: **SAN-2023-0017558**<br><br>Sobre: Construcción |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 24 de abril de 2026.

Comparece ante nos SP Construction Group LLC (en adelante, SP Construction o recurrente) y solicita la revisión de la *Resolución* emitida el 6 de noviembre de 2025, notificada y archivada en autos el 7 de noviembre de 2025, por el Departamento de Asuntos del Consumidor (en adelante, DACo). Mediante la misma, la agencia declaró ha lugar a la querella presentada por el señor Blake Reyes (en adelante, señor Reyes o recurrido) contra SP Construction.

Por las razones que expondremos a continuación, se confirma la determinación recurrida.

## I.

Según surge del expediente, el 5 febrero de 2022, el señor Blake contrató a SP Construction para la reparación de las grietas, aplicación de sellador y reparo interior del techo de su propiedad, por lo que se acordó un pago de $4,500.00. Mientras SP Construction iba terminando los trabajos, el señor Reyes le contrataba para realizar labores adicionales luego de pagarle la cantidad acordada correspondiente. El proyecto, al involucrar una

diversidad de labores, culminó con una remodelación de la residencia del señor Reyes.

Así, el 29 de diciembre de 2023, el señor Reyes instó una querella (SAN-2023-0017558) contra SP Construction al amparo de la Ley Núm. 58 de 23 de abril de 1973, según enmendada, 3 LPRA sec. 341, *et seq.*, conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor*. En esencia, alegó que SP Construction nunca terminó los trabajos para los cuales fue contratado y que, luego de que se dejó de presentarse a laborar, el señor Santiago Prado (en adelante, señor Prado), dueño de SP Construction, le decía todas las semanas que estaba muy enfermo para continuar. Además, arguyó que el señor Prado y su pareja, la señora Virgen Pabón (en adelante, señora Pabón) dejaron de aparecerse en su casa luego de que se efectuaron los pagos en su totalidad, y que estos se rehusaban a devolverle la cantidad remitida o completar el trabajo acordado. Solicitó como remedio que se le convenciera al señor Prado a que terminara la obra o que reparara los daños.

Tras varios trámites, se llevó a cabo la vista administrativa el 1 de octubre de 2025. Durante esta, testificaron el señor Reyes y el señor Prado, quien representó a SP Construction, ambos por derecho propio. Asimismo, la señora Karla Sánches fungió como intérprete para el señor Reyes.

Así las cosas, el 6 de noviembre de 2025, el ente administrativo dictó la *Resolución* que hoy revisamos, la cual incluyó las siguientes determinaciones de hechos:

1. El 5 de febrero de 2022, la parte querellante contrató los servicios de SP Construction Group, LLC. para la reparación del techo de una residencia de su propiedad.

2. El alcance del trabajo consistía en la reparación de grietas en el techo, aplicación de reparación del techo interior. El trabajo incluía materiales y labor.

3. Las partes acordaron este trabajo en $4,500.00.

4. Según iban avanzando los trabajos, la parte querellante contrataba al querellado para la realización de trabajos adicionales.

5. El 19 de febrero de 2022, las partes acordaron la remodelación del baño. En general, el trabajo consistía en la remoción de la losa de piso existente; reemplazo de la mezcladora de ducha; remoción de lavamanos e instalación de un nuevo inodoro y lavamanos; instalación de 160 pies[1] de losa de pared; instalación de losa de piso en el área de la ducha. El trabajo consistía únicamente en mano de obra, los materiales serían provistos por el querellante. Las partes acordaron este trabajo en $2,500.00.

6. El 3 de marzo de 2022, las partes acordaron la remoción de la losa del piso de la cocina; remoción de 9 interruptores de luz (*switches*), instalación de calentador de agua; conexión de agua a la lavadora; instalación de toma de corriente de 220v para la secadora; instalación de secadora y lavadora. El costo de estas obras fue pactado en $1,200.00.

7. El 4 de marzo de 2022, las partes acordaron la realización de varios proyectos, a saber:

   - Reemplazo de la cablería desde la toma principal hasta el panel de *brakers*; reemplazo del panel de *brakers*; instalación de tres circuitos de 220v para la lavadora, calentador y estufa; reemplazo de los tomacorrientes de toda la casa; reemplazo de todos los interruptores de la casa; reemplazo del *braker* principal a 100 amp. Este trabajo incluía los materiales y la mano de obra. Las partes acordaron el mismo en $4,000.00.
   - Con relación a la instalación de la losa de piso, las partes acordaron la instalación de 1,150 pies[2] de losa; realización de los zócalos con la misma losa y la preparación del piso para la instalación. El contrato incluía únicamente la mano de obra. Las partes acordaron este proyecto en $4,000.00.
   - En cuanto a la pintura, las partes acordaron pintar el interior de la casa, el exterior y las rejas exteriores. La pintura sería provista por el querellante. Las partes acordaron la mano de obra en $2,300.00.

---

[1] Vigente desde el día 12 de julio de 2011.

- Con relación a la instalación de las puertas, las partes acordaron la instalación de 4 puertas interiores para los cuartos, 1 puerta interior para el baño, una puerta de entrada y una puerta trasera. El querellante proveería los materiales y acordaron la mano de obra en $1,200.00.
- En cuanto a las ventanas, las partes acordaron la remoción de las ventanas existentes e instalación de nuevas ventanas. La mano de obra fue pactada en $2,200.00.

8. El 11 de marzo de 2022, las partes acordaron la instalación de dos ventanas adicionales por la cantidad de $680.00.

9. El 16 de marzo de 2022, las partes acordaron la realización de varios trabajos eléctricos en dos dormitorios y en la cocina, así como la instalación de cuatro ventanas adicionales en el área de la cocina. Las partes pactaron la mano de obra en $1,250.00.

10. El 25 de marzo de 2022, las partes acordaron una nueva instalación para la lavadora y la secadora en el área de afuera, una línea eléctrica 220v para la secadora, línea de agua fría y caliente para la lavadora. Dicho trabajo incluía materiales y mano de obra por la cantidad de $800.00.

11. EI 21 de abril de 2022, las partes acordaron la realización de varios trabajos, entre estos: instalación de ventana, lijar y pintar madera frente a la ventana; cortar y soldar verja exterior; cambiar [el] "*circuit light*" en la cocina; hacer los marcos de los closets en PVC ¾; instalar panel de[l] *breaker* en el techo para la unidad de aire acondicionado hacia el panel principal y terminar [la] verja en cemento frente a la casa. Las partes acordaron el total de este proyecto en $1,730.00.

12. EI 17 de junio de 2022, las partes acordaron varios trabajos en el área del baño, entre los que se encontraban arreglar y cortar puertas; una nueva base del [inodoro]; reducir el área de la ducha[,] entre otros. Las partes acordaron el total de este proyecto en $2,300.00.

13. El 7 de julio de 2022, las partes acordaron la realización de un piso y una pared exterior. El trabajo incluía los materiales y la mano de obra por un total de $4,550.00.

14. EI 19 de septiembre de 2022, las partes acordaron la limpieza del techo con máquina de presión, limpiar todos los desagües e instalarles una malla metálica. Además, la aplicación de dos capas de sellador de techo a base de silicona y la instalación de dos nuevos desagües. EI trabajo incluía materiales y mano de obra por la cantidad de $1,426.00.

15. La parte querellante le pagó al querellado el total de lo acordado para la realización de los trabajos de remodelación.

16. En marzo de 2024, la parte querellante trató de llegar a un acuerdo con el querellado para finalizar la obra, pero no obtuvo respuesta de este.

17. El querellado no devolvió las llaves del apartamento del querellante por lo que éste se vio obligado a cambiar las cerraduras.

18. EI 25 de abril de 2024, un inspector de este Departamento llevó a cabo una inspección en la propiedad del querellante.

19. En el informe rendido, el inspector observó lo siguiente:

   a. *Rejas frontales faltan mano adicional de pintura, se observan partes sin pintar.*
   b. *Rejas traseras no fueron pintadas.*
   c. *Puerta trasera de la residencia le falta mano adicional de pintura.*
   d. *Querellante aplicó piso en cemento tanto en la marquesina como en patio trasero.*
   e. *Losas de piso reflejan leve desnivel y falta de aplicación adicional de lechada.*
   f. *Área de la cocina carece de conexi6n eléctrica para la estufa, ventanas colocadas carecen de tornillo de anclaje e la mocheta.*
   g. *No se observa filtración de agua por el techo interior dentro de la residencia.*
   h. *En el baño principal se observa losas con falta adicional de aplicación de lechada, ventana con rotura en el lado derecho, tope del "vanity" suelto y puerta del baño muestra descuadre en su montura.*
   i. *Superficie del techo, que a su vez sirve de terraza, muestra levantamiento de tratamiento por varios lugares con cúmulo de sedimentación.*

20.    Debido a que no se notificó correctamente a la parte querellada de la celebración de la inspección, este Departamento ordenó [que] se realizara una nueva inspección.

21.    El 11 de junio de 2025, se llevó a cabo una segunda inspección donde comparecieron ambas partes.

22.    En el informe rendido, el inspector observó lo siguiente:

> *Al momento de la visita se observó que las condiciones en la residencia estaban de la misma forma como en la pasada inspección del 25 de abril de 2024, con la excepción de que ahora se observa filtración de agua en el techo con exposición de varillaje en el área de la sala.[2]*
>
> *Las partes dialogaron, pero no llegaron a acuerdo alguno.*
>
> *Los desperfectos antes mencionados representan aproximadamente un 25% del trabajo realizado. Por lo tanto, se estima la corrección de los desperfectos antes mencionado[s] en aproximadamente; $12,500.00, incluyendo materiales y mano de obra.*

23.    El informe de inspección no fue impugnado por ninguna de las partes.

24.    Al momento de la vista administrativa la parte querellante había arreglado lo relacionado a la electricidad.

El DACo concluyó que entre las partes se perfeccionó un contrato de obra y que el señor Reyes cumplió con los pagos acordados en su totalidad, pero que SP Costruction incumplió con su obligación de realizar todos los trabajos. Además, consideró que SP Construction ni tenía la intención ni la capacidad de realizar los trabajos pactados con el señor Reyes. Por ello, se estimó que la corrección de los desperfectos totalizaba $12,500.00. Por ende, la agencia le ordenó a SP Construction que le pagara al señor Reyes la cantidad mencionada en 30 días desde la notificación del dictamen

---

[2] El informe rendido detallaba la totalidad de los hallazgos.

y que dicha suma devengaría interés legal si se incumplía con el término concedido.

Inconforme, el 1 de diciembre de 2025, SP Construction presentó una *Solicitud de Reconsideración y Solicitud de Determinaciones de Hechos Adicionales*. La misma no fue atendida.

Insatisfecho aún, SP Construction acude ante nos y señala que el DACo erró en lo siguiente:

> Erró el DACo al adjudicar responsabilidad e imponer una indemnización de $12,500.00 basándose principalmente en un informe de inspección que no fue presentado formalmente como evidencia en la vista administrativa, cuyo autor no testificó bajo juramento ni fue objeto de contrainterrogatorio, en violación a las garantías del debido proceso de ley.

> Erró el DACo al concluir que los desperfectos observados eran imputables al recurrente y constituían un incumplimiento contractual, sin haber establecido relación causal alguna entre los trabajos realizados y las condiciones identificadas, particularmente cuando las inspecciones se realizaron años después, existieron condiciones nuevas y no se analizó la posible intervención de terceros.

> Erró el DACo al fijar y confirmar una cuantía de $12,500.00 mediante un cálculo arbitrario, carente de base técnica, pericial o documental, cuando el propio inspector admitió que no tenía forma de identificar costos de reparación y se limitó a aplicar una fórmula porcentual general sin sustento objetivo, sin que tampoco el recurrido presentara cotizaciones, estimados ni prueba alguna que demostrara que dicha cantidad representa el valor real de los trabajos supuestamente pendientes o deficientes.

> Erró el DACo al incurrir en errores manifiestos de hecho y de derecho al concluir que el recurrente carecía de la intención o capacidad para culminar los trabajos y que la obra había sido incumplida, sin ponderar prueba testifical no controvertida sobre su experiencia, disponibilidad y ejecución de los trabajos, y al interpretar erróneamente la relación contractual entre las partes como un contrato único de obra, cuando del récord surge que se trató de múltiples órdenes de compra independientes, completadas, aceptadas y pagadas a lo largo de más de un año.

El 23 de enero de 2026, le otorgamos 20 días al señor Reyes para que expresara su postura al recurso instado. Sin embargo, no compareció.

A tenor con la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 15, 215 DPR __ (2025), este Foro puede "prescindir de términos no jurisdiccionales, específicos", escritos, notificaciones o procedimientos adicionales, "con el propósito de lograr su más justo y eficiente despacho...". Ante ello, prescindimos de la comparecencia del señor Reyes y procedemos a resolver.

**II.**

**A**.

Sabido es que los tribunales apelativos están llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Vélez v. ARPE,* 167 DPR 684, 693 (2006); *Otero v. Toyota*, 163 DPR 716, 727 (2005). Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un abuso de discreción. El criterio rector es la razonabilidad de la agencia recurrida.[3]

Así, al momento de evaluar una decisión administrativa, los tribunales tomarán en consideración, no solo la especialización y experiencia de la agencia sobre las controversias que tuviera ante sí, sino que también deben distinguir entre cuestiones relacionadas a la interpretación de las leyes —donde los tribunales son los especialistas— y aquellos asuntos propios para la discreción o pericia administrativa. *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. Véase, además, *Super Asphalt v. AFI y otros*, 206 DPR 803, 820

---

[3] Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 746 (2012); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

(2021); *Capó Cruz v. Jta. Planificación,* 204 DPR 581 (2020); *Román Ortiz v. OGPe*, 203 DPR 947 (2020).

Al aplicar el criterio de razonabilidad y deferencia, se ha dispuesto por la jurisprudencia que los foros apelativos no deben intervenir con las determinaciones de hechos que las agencias formulan, si las mismas están sostenidas por evidencia sustancial que obre en el expediente administrativo.[4] Bajo dicho escenario, los foros apelativos deben sostenerlas. Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675. Véase también, *Daco v. Toys "R" Us*, 191 DPR 760, 764 (2014); *Asoc. Vec. H. San Jorge v. U. Med. Corp.,* 150 DPR 70, 75 (2000). En cuanto a las conclusiones de derecho, la LPAU dispone que: "serán revisables en todos sus aspectos por el tribunal".

Empero, debemos puntualizar que, aunque nuestro más Alto Foro ha expresado en reiteradas ocasiones que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente, dicha consideración por parte de los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR ___ (2025).

En consonancia con lo anterior, el Tribunal Supremo de Puerto Rico, haciendo eco a las palabras del Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo,* 603 US 369 (2024), determinó en *Vázquez v. Consejo de Titulares,* supra*,* que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales y enfatizó la necesidad de que los

---

[4] Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Otero v. Toyota,* supra, pág. 728.

foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU.

Asimismo, el Tribunal Supremo de Puerto Rico expresó en *Vázquez v. Consejo de Titulares,* supra, que:

> [A]l enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial.

Ahora bien, debido a que las resoluciones de los organismos administrativos gozan de una presunción de legalidad y corrección, quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente para derrotarla. *Transp. Sonnell v. Jta. Subastas ACT*, 214 DPR 633 (2024); *García Reyes v. Cruz Auto Corp.*, supra, pág. 893; *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). De lo anterior surge claramente que la carga probatoria le corresponde a la parte recurrente. Si incumple, la decisión administrativa deberá ser respetada por el foro apelativo.

**B.**

En Puerto Rico existe el principio de la libertad de contratación. *Coop. Sabaneña v. Casiano Rivera,* 184 DPR 169, 173 (2011). El contrato es el negocio jurídico bilateral por el cual dos (2) o más partes expresan su consentimiento en la forma prevista por la ley para crear, regular, modificar o extinguir obligaciones. Artículo 1230 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9751.

El contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Existe consentimiento por el concurso de la oferta y de la aceptación cuando el oferente recibe la aceptación. Arts.1237 y 1238 del Código Civil de Puerto Rico de 2020, 31 LPRA secs. 9771 y 9772.

No obstante, ante la inexistencia de alguno de los requisitos antes mencionados, el contrato podrá ser nulo o anulable. El causante del dolo, la violencia o la intimidación queda sujeto a la indemnización de los daños y perjuicios resultantes. La prueba de la existencia del vicio y de su carácter incumbe a quien lo alega. Arts. 285 y 286 del Código Civil de Puerto Rico de 2020, 31 LPRA secs. 6191 y 6192.

Es a partir del perfeccionamiento de un contrato, que las partes quedan obligadas al cumplimiento de lo expresamente pactado y a las consecuencias que se deriven de éste, ello conforme a la buena fe, al uso y a la ley. *Álvarez v. Rivera*, 165 DPR 1, 19 (2005). Cuando un contrato es legal, válido y carente de vicios del consentimiento, constituye la ley entre las partes y debe cumplirse a tenor de éste. *Íd.* La persona que de cualquier modo contraviene el tenor de su obligación, debe indemnizar los daños y perjuicios causados. Art. 1158 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9303.

Debe tenerse presente que el principio de la autonomía contractual no es irrestricto y está sujeto a la intervención de los tribunales. Sin embargo, esas intervenciones deben proceder con sensatez y cautela, solamente cuando una de las prestaciones resulte excesiva, abusiva y una desproporción intolerable en las prestaciones. *Coop. Sabaneña v. Casiano Rivera*, supra, págs. 181-182.

**C.**

La Ley Núm. 5 del 23 de abril de 1973, según enmendada, mejor conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor*, 3 LPRA sec. 341 *et seq.,* creó al DACo para eliminar el estado de indefensión y desamparo en el cual estaban sumidos los consumidores. Conforme con su exposición de motivos, este ente administrativo posee el deber de ventilar y adjudicar las querellas

que los consumidores presenten, fiscalizar el cumplimiento de las leyes que tienen como objetivo proteger a esta parte de la población, así como educar y concederle al consumidor representación adecuada en defensa de sus derechos. Véase Exposición de motivos de la Ley Núm. 5 del 23 de abril de 1973, *supra*. Por lo tanto, el DACo tiene como norte vindicar e implantar los derechos del consumidor. Art. 3 de la Ley Núm. 5 del 23 de abril de 1973, *supra*.

En concordancia con el propósito perseguido por la referida disposición de ley, el DACo tiene la autoridad de atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía. *Íd.*, sec. 341e(c). Además, observamos que, entre los poderes y facultades otorgadas al Secretario del DACo, se encuentran:

> (g) Establecer las reglas y normas necesarias para la conducción de los procedimientos administrativos, tanto de reglamentación como de adjudicación, que celebre el Departamento. *Íd.*, sec. 341 e(g).

En efecto, y, conforme con las facultades de reglamentación delegadas en ley a DACo, esta agencia promulgó el Reglamento de procedimientos adjudicativos, Reglamento Núm. 8034 de 13 de junio de 2011 (en adelante, Reglamento Núm. 8034). Este reglamento se aprobó con el fin de asegurar la solución justa, rápida y económica de las querellas presentadas ante el DACo y promover un procedimiento uniforme para su adjudicación. Véase *Íd.*, Regla 1, pág. 1.

Pertinente a la controversia ante nuestra consideración, la Regla 14 del Reglamento Núm. 8034, *supra*, regula todo lo concerniente a las inspecciones o investigaciones. Específicamente, su cuarto inciso indica que:

> La persona encargada de la investigación o inspección, luego de culminada, preparará en forma detallada un informe que cubra toda la investigación. El informe deberá ser claro y conciso conteniendo un estimado de

costos detallado de las piezas, artículos, materiales y la cantidad global de costos de los servicios necesarios para un remedio adecuado. *Íd.*, pág. 15.

Relacionado con esto, las partes tendrán 15 días desde la notificación del informe para presentar sus objeciones por escrito, las cuales deberán ser "precisas y específicas e indicar si se requiere la presencia del investigador en la vista administrativa". *Íd.*, Regla 15.2. De no objetar el informe dentro del término provisto, este se entenderá como estipulado por las partes, lo cual releva al inspector o investigador de personarse y testificar en la vista administrativa. *Íd.*, Regla 15.3, pág. 16.

Asimismo, y relacionado con el recurso de marras, es menester destacar que el juez administrativo tiene la facultad de conceder el remedio que corresponda en derecho, sea este solicitado por el querellante o no, lo cual incluye la compensación monetaria. Véase Reglas 27.1 y 27.2 del Reglamento Núm. 8034, *supra.*

### III.

En su escrito, el recurrente hace constar su inconformidad con la decisión del DACo de declarar *ha lugar* a la querella presentada por el recurrido.

En su primer señalamiento de error, el recurrente alega que el DACo erró al adjudicarle responsabilidad e imponer una indemnización en su contra basada en un informe de inspección que no fue presentado en evidencia y cuyo autor no fue sujeto a contrainterrogatorio, lo cual es contrario al debido proceso de ley.

En su segundo señalamiento de error, el recurrente arguye que el DACo incidió al concluir que los desperfectos observados en la inspección eran imputables a él, por no haberse establecido apropiadamente un nexo causal porque las inspecciones se realizaron años luego de la realización de los trabajos.

En su tercer señalamiento de error, el recurrente argumenta que el DACo se equivocó al fijar una cuantía basada en un cálculo

arbitrario sin base técnica, pericial o documental, con la aplicación de una fórmula general, sin evidenciar que esa cantidad representa el valor real de los trabajos pendientes.

En su cuarto señalamiento de error, el recurrente aduce que el DACo no acertó al concluir que el recurrente no tenía la capacidad o intención de culminar los trabajos y que la obra se incumplió sin ponderar prueba al respecto.

Por estar íntimamente relacionados, discutiremos los errores primero, tercero y cuarto en conjunto.

Según hemos discutido, el Reglamento Núm. 8034, *supra*, regula lo concerniente a las inspecciones cuando se insta una querella ante el DACo. Para ello, se prepara un informe *detallado* y *conciso* con un estimado de costos de aquello necesario para un remedio adecuado. *Íd.* Regla 14.4, pág. 15. A esos efectos, el 11 de junio de 2025, el inspector asignado al caso detalló los desperfectos percibidos en su informe:

1) Rejas frontales faltan mano adicional de pintura, se observan partes sin pintar.

2) Rejas traseras no fueron pintadas.

3) Puerta trasera de la residencia le falta mano adicional de pintura.

4) Querellante aplicó piso en cemento tanto en la marquesina como en patio trasero.

5) Losas de piso reflejan leve desnivel y falta de aplicación adicional de lechada.

6) Área de la cocina carece de conexión eléctrica para la estufa, ventanas colocadas carecen de tornillo de anclaje e la mocheta.

7) No se observa filtración de agua por el techo interior dentro de la residencia.

8) En el baño principal se observa losas con falta adicional de aplicación de lechada, ventana con rotura en el lado derecho, tope del "vanity" suelto y puerta del baño muestra descuadre en su montura.

9) Superficie del techo, que a su vez sirve de terraza, muestra levantamiento de tratamiento por varios lugares con cúmulo de sedimentación.

[...]

Por orden de la División Legal del Departamento se cita a las partes a un re-inspección en la residencia de la parte querellante. Presentes estuvieron:

1) Sr. Blake Reyes- Querellante.

2) Sr. Santiago Prado- Presidente de la firma querellada.

Al momento de la visita[,] se observó que las condiciones en la residencia estaban de la misma forma como en la pasada inspección del 25 de abril de 2024, con la **excepción de que ahora se observa filtración de agua en el techo con exposición de varillaje en el área de la sala**.

Las partes dialogaron, pero no llegaron a acuerdo alguno. Los desperfectos antes mencionados **representan aproximadamente un 25% del trabajo realizado**.

Por lo tanto, se estima la corrección de los desperfectos antes mencionado en aproximadamente; **$12,500.00**, incluyendo materiales y mano de obra. (Énfasis suplido).

Somos del criterio de que el documento precitado detalla con suficiencia los materiales y desperfectos habidos en la residencia del señor Reyes. Asimismo, entendemos que el cálculo utilizado para llegar a la cuantía es uno razonable. Es importante destacar que, el DACo tiene la facultad de conceder el remedio que proceda en derecho, independientemente de lo solicitado por el querellante o lo recomendado por el inspector. Véase Regla 27.1 del Reglamento Núm. 8034, *supra*, pág. 28. En esta ocasión, la agencia tomó como base para su adjudicación el estimado provisto por el inspector, quien presenció el estado de la propiedad y concluyó que los defectos observados se debieron a trabajos incompletos o de calidad deficiente, debido a que le concedió al recurrido la devolución de la cuantía necesaria para corregir los desperfectos observados. Es decir, le confirió valor probatorio al informe *estipulado* por las partes.

Dicho lo anterior, si alguna parte no está de acuerdo con el contenido de un informe, tendrá 15 días desde su notificación para

objetarlo *precisa* y *específicamente,* aludiendo *expresamente* a si desea que el inspector testifique en la vista administrativa. Reglamento Núm. 8034, *supra,* Regla 15.2, pág. 15. Si no se presentan objeciones dentro del término reglamentario dispuesto para ello, el informe de inspección se considerará como *estipulado* y será *innecesaria* la comparecencia y el testimonio del investigador en una audiencia. *Íd.,* Regla 15.3, pág. 16. Como en el caso de marras no surge del expediente que ninguna de las partes se haya opuesto oportunamente al informe, este quedó admitido automáticamente mediante estipulación, lo que hace redundante el testimonio del inspector en la vista administrativa.

Por otra parte, el recurrente sugiere que no hubo un incumplimiento contractual por su parte en el contexto de un contrato de obra porque se trataban de compraventas individuales, y que estaba dispuesto a culminar con las labores.

Analizado el expediente y su respectiva TPO, concluimos que no incidió la agencia recurrida al pronunciar su dictamen y concluir que hubo un incumplimiento contractual por el recurrente. De la *Resolución* recurrida, se desprende que el DACo emitió su determinación basada en la prueba documental que obraba en el expediente del caso, así como en la credibilidad que le merecieran los testimonios vertidos en la vista administrativa.

Independientemente de la naturaleza de la relación contractual entre el señor Reyes y SP Construction, coincidimos con el DACo en su apreciación de la prueba sobre la existencia de un incumplimiento contractual. El recurrido cumplió con todos sus pagos mientras que el recurrente incumplió al no realizar todos los trabajos acordados. El recurrente no solo demostró no tener la capacidad física para realizar las labores en un momento dado por su delicado estado de salud, si no que este se negó a continuar con sus trabajos en múltiples ocasiones y se rehusó incluso a devolverle

las llaves de su residencia al recurrido, lo cual presentó un problema de seguridad que suscitó una enmienda a la querella. Por ello, la agencia entendió que el mejor proceder era la indemnización monetaria por los trabajos restantes.

En suma, revisadas las conclusiones de derecho del DACo en todos sus aspectos, colegimos que el recurrente no logró derrotar la presunción de corrección que ostentan las decisiones administrativas, ni tampoco nos persuadió a alejarnos de la norma de deferencia que estas merecen. La decisión de la agencia fue razonable y se dictó bajo el marco doctrinal adecuado. En consecuencia, confirmamos la *Resolución* impugnada.

**IV.**

Por los fundamentos antes expuestos, se confirma el dictamen recurrido.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones